## BUFFALO FORGE CO. AND BUFFALO STEAM PUMP CO., PETITIONERS, *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT.

Docket No. 3170.  Promulgated December 23, 1926.

1. Expenditures over the years 1909 to 1913 properly applicable to the cost of perfecting and developing a patent determined and allowed as a deduction from the sales price of the patent in 1917 for the purpose of determining the gain or loss upon such sale.

2. Interest paid by a subsidiary upon its indebtedness to the parent should be excluded as a deduction by the subsidiary and from income of the parent, in determining consolidated invested capital for the purpose of the 1917 excess-profits tax, and the amount of the indebtedness of the subsidiary to the parent in excess of the amount of the indebtedness on which it was entitled to deduct interest paid for income-tax purposes under Title I of the Revenue Act of 1917 was not a proper item to be included in computing consolidated invested capital.

*H. A. Mihills, C. P. A.*, for the petitioners.
*L. L. Hight, Esq.*, for the respondent.

The Commissioner determined deficiencies in income and profits taxes in the amounts of $30,876.06 and $75,203.67 for the calendar years 1917 and 1918, respectively, and $5,011.57 for the eleven-month period ending November 30, 1919.

The issue relating to the deduction for amortization of war facilities for 1918 and 1919 having been eliminated by stipulation, the petitioners claim, first, that the Commissioner erred in his determination of a profit of $95,000 on the sale for $115,000 in 1917 of the English rights to certain patents acquired prior to March 1, 1913, and certain improvements thereon; secondly, that the Commissioner erred in deducting from the consolidated net income for excess-profits-tax purposes for 1917 the amount of $3,218.88, representing interest paid by the Buffalo Steam Pump Co., a subsidiary of the Buffalo Forge Co., in excess of the amount of the interest which the Buffalo Steam Pump Co. was entitled to deduct in determining net income under section 12(a) Third of the Revenue Act of 1916, as amended by section 1207 of the Revenue Act of 1917, and that the Commissioner should have included in consolidated invested capital the amount of $70,802.04, representing the amount of the indebtedness of the Buffalo Steam Pump Co. to the Buffalo Forge Co. on which the former was not entitled to deduct interest paid.

#### FINDINGS OF FACT.

The Buffalo Forge Co., hereinafter referred to as the petitioner, and its subsidiary, the Buffalo Steam Pump Co., are New York corporations with principal office at Buffalo.

In 1887, William S. and Henry W. Wendt, brothers, formed a partnership and began the manufacture of heating and ventilating apparatus, portable forges, drills, punches, shears, and blowers. In 1901 the business was incorporated and in 1905 the company acquired the Buffalo Steam Pump Co., which was engaged in the manufacture of similar articles.

The petitioner's operations were originally commenced under a patent, and a number of inventions were subsequently developed and patented. No separate cost records were ever maintained with respect to experimental and development work in connection with these various patents. Labor and material costs, as well as all expenses, were absorbed in general operating costs, no portion thereof being capitalized upon the books of account.

In 1907, James H. Van Deventer, an experienced mechanical engineer, became associated with the petitioner as general superintendent. Soon thereafter he conceived the idea of a compact spiro turbine engine, having one or more pairs of rotors, each having a plurality of spirally disposed and intermeshing tooth blades and propelled by steam, compressed air, or fluid. In the latter part of 1908 the petitioner acquired the necessary tools and materials and began the development of this device through the manufacture of models. Applications for letters patent were promptly filed and patents were granted by Great Britain on May 25, 1911, and by the United States on June 27, 1911. During 1909 two men in addition to Van Deventer and Weidenbach, superintendent of the tools shops, who devoted a great deal of their time to this work, were employed exclusively in the work of developing this invention. The cost hereinafter shown for materials and labor in the perfection and development of the spiro turbine engine includes only compensation paid to workmen engaged exclusively in the development of this patent and does not include any compensation for Van Deventer or Weidenbach, nor does it include any amount paid for draftsmen, pattern makers, or to any one whose time was not devoted exclusively to the development of this invention.

During the years 1909 to 1913 petitioner expended for materials, labor and experimental work in perfecting and developing the spiro turbine engine a total of $61,850, as follows:

| Year. | | Amount. |
|---|---|---|
| 1909 | Material | $300.00 |
| | Labor—2 men | 1,200.00 |
| 1910 | Material | 1,200.00 |
| | Labor, 9 men | 8,200.00 |
| 1911 | Material | 3,000.00 |
| | Labor, 26 men | 23,850.00 |
| 1912–1913 | Material | 2,500.00 |
| | Labor, 26 men | 21,350.00 |
| 1913 | Experimental tests | 250.00 |
| Total | | 61,850.00 |

The manufacturing or overhead expense, not including administrative, general or selling expense, represented an average of 61.8 per cent of the total labor for the years 1909 to 1913. The total cost

of labor included in the development cost of the patented spiro turbine was $54,060, to which should be added $33,742.80, representing overhead expense properly allocable to the development of this invention computed upon the basis of 61.8 per cent. The total cost of the patent was therefore $95,592.80.

The patent granted in 1911, which covered the principle of the spiro turbine engine, was assigned by Van Deventer to the petitioner. Thereafter, between 1911 and 1913, patents on improvements were granted on applications of Van Deventer, as assignor to the Buffalo Forge Co.

In 1912 various experiments and tests as to the use of the spiro turbines in the operation of coal-cutting machinery and for other purposes were made and the invention was found to be thoroughly practicable and efficient, particularly in the operation of coal-cutting machinery in use in the coal mining industry. In that year the petitioner acquired information as to the probable demand existing in the English market for an engine of this type in the operation of coal-cutting machinery in the gaseous mines of that country. The first engine under this patent was sold in January, 1913, for $400. Subsequent sales were made at $350 each. The cost of producing the engine was approximately $175, so that upon each engine sold a profit of approximately $175 was realized. The sales of the spiro turbine engine in 1913 amounted to $1,775, and the sales gradually increased thereafter with the result that in 1917, when the English rights under the patents were sold, the annual sales amounted to $90,000. Practically all sales had been made to American concerns who, in turn, sold the engine in the English market. No sales of the spiro turbine engine were made by the petitioner from the date of the sale of the English rights of the patents to and including 1920. One thousand and fifty dollars was received from the sale of parts. In computing the gain upon the sale of the English rights under the patents, the Commissioner determined that the patent had no fair market price or value on March 1, 1913. However, the Commissioner deducted from the sales price the amount of $20,000, representing an expenditure by the petitioner in 1917 in clearing the title to the British patent, thereby determining a profit of $95,000 upon the sale of the patents in 1917 for $115,000.

The Commissioner disallowed a deduction from 1917 taxable income of $3,218.88, representing interest for that year upon $70,802.04, the excess of the indebtedness of the Buffalo Steam Pump Co. to the petitioner upon which it was entitled to a deduction for interest paid under section 12 (a) Third of the Revenue Act of 1916, as amended by section 1207 of the Revenue Act of 1917. In determining the consolidated net income for the purpose of the excess-profits

tax, the Commissioner deducted therefrom the above mentioned amount of $3,218.88 and declined to include in the consolidated invested capital the amount of $70,802.04.

### OPINION.

LITTLETON: Petitioner claims (1) that the fair market price or value of the English rights of the patent on March 1, 1913, was $150,000, and that it therefore derived no taxable gain from the sale thereof in 1917; (2) that in the event the Board does not agree with it as to the March 1, 1913, value, the cost of $95,592.80 properly applicable to the development and perfection of the patent should be considered and deducted from the sales price in determining gain or loss in 1917.

Considerable testimony was given as to the probable future earnings anticipated on March 1, 1913, from the sale of the patented spiro turbine engine, predicated primarily upon information, which has not been shown to have been very definite, as to the probable number of engines that petitioner might be able to sell for shipment into England. The Board is unable to make a finding that the patent had a fair market price or value on March 1, 1913.

The evidence as to the amounts expended between 1909 and 1913 in perfecting and developing the patent is clear and convincing, and we are satisfied therefrom that the petitioner expended for materials and labor properly applicable to the work of perfecting and developing this patent the amount of $95,592.80, as hereinbefore set forth. This amount, less proper exhaustion from the date of expenditure at the rate of one-seventeenth per annum from 1911, should therefore be deducted from the sales price in 1917 in addition to the $20,000 allowed by the Commissioner.

In determining consolidated net income for 1917 for the purpose of the income tax, the Commissioner disallowed as a deduction $3,218.88, representing interest on $70,802.04, the amount in excess of the limitation of indebtedness for which the Buffalo Steam Pump Co., subsidiary, could deduct interest under the provisions of section 12 (a) Third of the Revenue Act of 1916, as amended by section 1207 (1) of the Revenue Act of 1917. This disallowed interest was paid to the Buffalo Forge Co., parent. In determining consolidated net income for excess-profits-tax purposes under section 206 of Title II of the Revenue Act of 1917, the Commissioner deducted therefrom the amount of $3,218.88, the excess of the interest allowable as a deduction under Title I of the Revenue Act of 1916, as amended by the Revenue Act of 1917. The petitioner claims that this action of the Commissioner was incorrect under the provisions of section 206 (c), Title II, of the Revenue Act of 1917, and that the excess

interest of $3,218.88 should not have been deducted from consolidated net income for invested capital purposes, but that the amount of $70,802.04, the indebtedness of the Buffalo Steam Pump Co., subsidiary, on which it was not entitled to deduct interest paid to the parent company, should have been included in computing the consolidated invested capital for the taxable year 1917 under the provisions of article 44 (b) of Regulations 41.

In the opinion of the Board the determination of the Commissioner in respect of this issue was correct. All interest paid by the subsidiary to the parent was an intercompany transaction which had no effect upon consolidated net income for excess-profits-tax purposes. Neither was the excess indebtedness of $70,802.04 of the Buffalo Steam Pump Co., subsidiary, to the Buffalo Forge Co., parent, a proper item to be included in consolidated invested capital. *Appeals of Gould Coupler Co.*, 5 B. T. A. 499; *Farmers Deposit National Bank*, 5 B. T. A. 520; *Ruckman Coal Co.*, 5 B. T. A. 534; *H. S. Crocker Co.*, 5 B. T. A. 537.

*Judgment will be entered on 15 days' notice, under Rule 50.*